REVISED APRIL 1, 2009
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 17, 2009

Charles R. Fulbruge III
Clerk

No. 07-31165

MERLIN S. CAMPO

Plaintiff-Appellant

v.

ALLSTATE INSURANCE COMPANY

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before WIENER, GARZA, and DeMOSS, Circuit Judges.

JACQUES L. WIENER, JR., Circuit Judge:

Plaintiff-Appellant Merlin Campo appeals the district court's grant of summary judgment in favor of defendant-appellee Allstate Insurance Company ("Allstate"). Campo held a Standard Flood Insurance Policy ("SFIP") issued by Allstate as a Write-Your-Own ("WYO") carrier participating in the National Flood Insurance Program (the "Program"). This policy expired just before Hurricane Katrina destroyed Campo's home. He asserts that Allstate's negligent misrepresentations in violation of Louisiana law caused him not to reinstate the expired policy. Campo contends that the district court erred in holding that federal law preempted his claims because they were related to

claims handling. Concluding that Campo's claims are instead related to policy procurement and not preempted by federal law, we reverse the district court's grant of Allstate's motion for summary judgment and remand for further proceedings.

## I. FACTS AND PROCEEDINGS

On August 29, 2005, Hurricane Katrina destroyed appellant Merlin Campo's home located in St. Bernard Parish, Louisiana. Prior to August 2005, and for over twenty years, Campo held a SFIP through Allstate, which issued the policy as a WYO carrier. Campo's 2004–2005 coverage period ended, however, on August 13, 2005, the date when Campo's $1,237 premium to reinstate coverage for 2005–2006 was due. The policy included a 30-day grace period for payments, so that if Campo paid the premium by September 13, he would have avoided a gap in coverage.[1] Because of Hurricane Katrina, however, the Federal Emergency Management Agency ("FEMA") extended this deadline for an additional ninety days — until December 12, 2005 for purposes of Campo's policy. Campo had received a renewal notice before August 13, 2005 and knew that his policy would expire on that date, but he did not pay the premium by then.

Campo filed a claim under the expired policy shortly after Katrina struck on August 29, 2005. On October 29, 2005, Allstate sent Campo a letter indicating that it had (1) evaluated his claim and (2) requested the Program to issue a check payable to Campo for the policy limit of $98,200, and Allstate sent Campo an advance check of $2,500 for additional living expenses under the

---

[1] The SFIP does not explicitly label this period as a "grace period." See 44 C.F.R. pt. 61, app. A(1), art. VII(H)(2) (2008) ("We must receive the payment of the appropriate renewal premium within 30 days of the expiration date."). For the purposes of this case, however, the parties do not dispute that during this 30-day period, insured parties may submit their premiums to re-activate coverage under their expired policies retroactively, without any gap in coverage.

policy.[2] Allstate did not inform Campo that these payments were conditional on Allstate's eventual timely receipt of the $1,237 renewal premium. Although Campo phoned Allstate representatives multiple times during this period, the representatives never mentioned anything to Campo about the delinquent premium payment.

On December 12, 2005, the extended grace period expired without Campo ever having submitted his premium. Then, on December 28, Allstate sent Campo a letter stating that "coverage cannot be extended for this claim" and instructing Campo to repay the $2,500 it had advanced. Allstate sent another letter on January 27, 2006, confirming that the claim was denied because its "records indicate that this policy lapsed August 13, 2004 [sic]. As no policy was in force at the time of this loss, we are unable to extend coverage or payment consideration."

Campo filed this diversity suit in federal district court, alleging that Allstate and its representatives made negligent misrepresentations that prevented Campo from renewing his policy.[3] Campo and Allstate filed cross-motions for summary judgment. Although the district court's opinion admonished Allstate for setting "an example of bungling by the defendant of a degree that this Court has previously not witnessed in the multitude of Katrina cases on its docket," it held that Campo's claims were handling-related, and thus

---

[2] The SFIP does not provide for the payment of additional living expenses. This advance payment instead should have been labeled advanced compensation for Campo's personal property pursuant to Article III(B) of the SFIP.

[3] The precise nature of Campo's state-law claims is unclear from the record. His brief before this court, however, describes them as negligent misrepresentation and equitable estoppel. Any other claims, if they ever existed, are waived by Campo's failure to argue them in his appellate brief. See, e.g., Gann v. Fruehauf Corp., 52 F.3d 1320, 1328 (5th Cir. 1995).

preempted by federal law. Accordingly, the court granted Allstate's motion and denied Campo's. This timely appeal followed.[4]

## II. ANALYSIS

### A.  Standard of Review

We review de novo a district court's grant of summary judgment.[5] Summary judgment is appropriate only if there is no genuine issue of material fact.[6] In determining whether a genuine issue of material fact exists, courts view all facts and draw all inferences therefrom in favor of the non-moving party.[7] The court's role at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[8]

### B.  Statutory and Regulatory Framework

By enacting the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 et seq., Congress established the Program to make flood insurance available on reasonable terms and to reduce fiscal pressure on federal flood relief efforts. FEMA administers the Program.[9] Within the Program, the WYO program allows private insurers to issue flood insurance policies in their own names. Under this framework, the federal government underwrites the policies and private WYO carriers perform significant administrative functions including

---

[4]  At oral argument before this court, Allstate represented that the instant case is unique and that there are few, if any, other cases "in the pipeline" that involve similar fact-patterns.

[5]  Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 259–60 (5th Cir. 2003).

[6]  Weeks Marine, Inc. v. Fireman's Fund Ins. Co., 340 F.3d 233, 235 (5th Cir. 2003).

[7]  Id.

[8]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[9]  See 42 U.S.C. § 4011(a) (2006).

"arrang[ing] for the adjustment, settlement, payment and defense of all claims arising from the policies."[10]  WYO carriers must issue policies containing the exact terms and conditions of the SFIP set forth in FEMA regulations.[11] Additionally, FEMA regulations govern the methods by which WYO carriers adjust and pay claims.[12]  Although WYO carriers play a large role, the government ultimately pays a WYO carrier's claims.[13]  When claimants sue their WYO carriers for payment of a claim, carriers bear the defense costs, which are considered "part of the . . . claim expense allowance";[14] FEMA reimburses these costs.[15]  Yet, if "litigation is grounded in actions by the [WYO] Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence," then such costs will not be reimbursable to the WYO carrier.[16]

C.    Campo's Claims Are Procurement-Related

Federal law preempts "state law tort claims arising from claims handling by a WYO."[17]  We thus must first determine whether the district court was

---

[10]  Gallup v. Omaha Prop. & Cas. Co., 434 F.3d 341, 342 (5th Cir. 2005).

[11]  See 44 C.F.R. §§ 61.4(b), 62.23(c)–(d) (2008) (mandating use of SFIP terms); 44 C.F.R. pt. 61, app. A(1) (setting forth SFIP terms).

[12]  C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 267 (3d Cir. 2004) (citing 44 C.F.R. §§ 61.1–78.14).

[13]  See Gallup, 434 F.3d at 342.

[14]  44 C.F.R. § 62.23(i)(6) (2008).

[15]  C.E.R., 386 F.3d at 270 & n.9 (citing 42 U.S.C. § 4017(d)(1)) (noting that Congress reimburses costs, including defense costs, for adjustment and payment of claims).

[16]  44 C.F.R. pt. 62, app. A, art. III(D)(3)(a).

[17]  Wright v. Allstate Ins. Co., 415 F.3d 384, 390 (5th Cir. 2005) (emphasis added).  Our holding in Wright did not rely on a 2000 amendment to the SFIP that explicitly states:  "This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by" FEMA regulations.  44 C.F.R. pt. 61, app. A(1), art. IX.  In Gallup we held that pursuant to the National Flood Insurance Act, FEMA has the authority to promulgate such regulations.  434 F.3d at 344–45.

correct in holding that Campo's suit is related to claims handling. If we conclude that it is, we must affirm the district court's grant of summary judgment. Campo contends that his claims instead relate to insurance procurement and are not preempted by federal law. If we conclude that his claims do relate to procurement, we must then determine whether preemption of state-law claims extends to procurement.

Allstate contends that Campo's suit addresses policy renewal, or reinstatement, which in its view is akin to claims handling. At least three district judges in this Circuit have reached a contrary conclusion. First, in Landry v. State Farm Fire & Casualty Co., the plaintiffs renewed their State Farm-issued SFIP each year and alleged that they requested, and were assured by their State Farm agent, that they would have "full coverage" — the "best coverage available."[18] After Hurricane Katrina, the plaintiffs learned they did not have contents coverage and subsequently sued for negligent failure to provide coverage.[19] The plaintiffs asserted that the case involved procurement and State Farm contended that it was a handling issue because policy renewal is heavily regulated by FEMA.[20] The district court rejected State Farm's argument, ruling that even though "many aspects of [the Program] are heavily regulated by FEMA[,] . . . the obtaining of coverage does not involve the interpretation or management of an active" SFIP.[21] The court held that the "case present[ed] a question of policy procurement, in that it involve[d] the initial obtaining of coverage."[22]

---

[18] 428 F. Supp. 2d 531, 532 (E.D. La. 2006).

[19] Id.

[20] Id. at 535.

[21] Id.

[22] Id.

Next, in Meza v. All State Insurance Co., the plaintiffs' mortgage company paid their insurance premiums out of an escrow account maintained for that purpose.[23] When the plaintiffs paid off their mortgage in full, they advised their Allstate agent of this fact and apparently expected that future policy documents would be sent directly to them.[24] Neither the agent nor anyone else made arrangements to reflect this change.[25] As a result, Allstate sent renewal information to the mortgage company, which did not forward it to the plaintiffs.[26] After Hurricane Katrina, Allstate advised the plaintiffs that they did not have flood insurance.[27] The plaintiffs sued, claiming that Allstate's failure to notify and advise them of their policy's termination caused them to have no insurance in August 2005. The district court held that the plaintiffs presented a procurement case: "Upon cancellation of the mortgage[, the] policy had to be renewed or otherwise re-procured for plaintiffs."[28] The court was "[un]willing to create a new subcategory of 'administration of an existing [Program] policy' cases."[29]

Third, in Jackson v. State Farm Fire & Casualty Insurance Co., the plaintiffs "continuously renewed" their flood insurance for several years, allegedly thought that they had flood insurance, but, after Hurricane Katrina, learned that their SFIP had not been renewed.[30] The plaintiffs sued State Farm

---

[23] No. 06-cv-1548, 2007 WL 594900, at *1 (W.D. La. Feb. 15, 2007).

[24] Id.

[25] Id.

[26] Id.

[27] Id.

[28] Id. at *3.

[29] Id. at *4.

[30] No. 06-cv-4467, 2006 WL 3332835, at *1 & n.4 (E.D. La. Nov. 9, 2006).

and their State Farm agent under Louisiana law for errors and omissions and for breach of their fiduciary duties in procuring flood insurance coverage.[31] The district court, relying on Landry, determined that a cause of action as to a "failure to procure flood insurance renewal" was not a "handling" claim.[32]

We approve of the approach taken by the district courts in these cases[33] and hold that Campo's claims are related to procurement rather than handling. To the extent that this case involves handling of a "claim," it is merely a "fictitious claim" in the sense that the act of filing a claim on an expired policy, i.e., a dormant policy, is equivalent to filing no claim at all. At the relevant time, Campo's policy had expired subject to restoration only in the event that he paid the premium within the extended grace period. Allstate was thus by definition incapable of handling any new claims based on post-expiration occurrences. Contrary to the dissent's principal fallacy, Campo could not have continued his coverage by paying his renewal premium at any time between August 13 and December 12, 2005. Campo's coverage had expired; there was thus nothing to continue. Instead, as a former policyholder, Campo would have had to procure flood insurance. One way for him to do this was to pay his renewal premium to Allstate by December 12, which would have caused his expired policy to be reinstated. The mere fact that Allstate, for a time, mistakenly acted as though a claim existed does not make it so. It is thus impossible for Campo's claims to fall within the category of handling. To hold otherwise would permit insurers like Allstate to ensure unilaterally that disputes would be classified as

---

[31] Id.

[32] Id. at *4 (citing Landry v. State Farm Fire & Cas. Co., 428 F. Supp. 2d 531, 535 (E.D. La. 2006)).

[33] Each of these cases addressed the handling/procurement distinction in the context of whether federal question jurisdiction existed. The analysis is equally applicable to our discussion of the distinction in the subject diversity-jurisdiction case.

preempted handling-related suits by simply acting as though they were handling claims when in fact none existed as a matter of law.

Even though this is not a matter of initial procurement, the discrete facts of this case nevertheless demonstrate that it is procurement-related: Allstate's alleged misrepresentations occurred when Campo's only relationship with Allstate was that of both a former and a potential future policyholder. Further, Allstate's representations were allegedly of a kind that could lull parties like Campo into believing that they would receive indemnity without having to submit any additional payment, thus affirmatively dissuading them from paying their delinquent premiums to reinstate expired coverage, i.e, to procure insurance, while the shot clock of the grace period ticked away. In light of the peculiar and unusual circumstances of this case, we hold that Campo's state-law claims are not related to the handling of an insurance claim, but rather concern a species of insurance procurement.[34]

## D.    Federal Law Does Not Preempt Procurement-Related Claims

Having concluded that Campo's claims relate to procurement rather than handling, we next must determine whether federal law preempts state-based procurement claims. Federal law may preempt state law in any of three ways, to wit: when (1) Congress explicitly "define[s] the extent to which it intends to pre-empt state law"; (2) Congress indicates "an intent to occupy an entire field of regulation"; or (3) state law conflicts with federal law such that either (a)

---

[34] We do not have occasion, however, to decide whether it is ever possible for a renewal-based claim to be classified as handling-related. At least one district court has held that a renewal dispute was handling-related when a SFIP provision expressly governed the specific issue in question — the preparation and mailing of renewal notices. See Jackson, 2006 WL 3332835, at *4 n.17 (citing McCulloch v. Delta Lloyds Ins. Co. of Houston, Civ. No. H-01-3747, slip op. at 19, 21 (S.D. Tex. June 30, 2003)). We do not reach that issue today because the SFIP provides no remedy for the specific situation in which an insurance company acts as though it is handling a claim until the insured's grace period expires, and then, as soon as the grace period expires, denies coverage. The SFIP governs renewal in too general of a capacity for us to say that it specifically addresses this issue.

there is an actual conflict and compliance with both laws is impossible, or (b) state law is an obstacle to the "full purposes and objectives of Congress."[35]

We have not definitively addressed the issue whether federal law preempts state-law tort claims against WYO carriers arising from policy procurement. In Wright, we simply noted, without approval or disapproval, that district courts have read our precedent "as holding that state law claims based on claims procurement were not preempted while state law claims based on claims adjustment were."[36] In fact, district courts of this Circuit that have addressed the issue have consistently reached the conclusion that federal law does not preempt procurement claims.[37]

Now that the procurement issue is squarely before us, we conclude that two factors convincingly demonstrate that federal law does not preempt state-law procurement-based claims. First, Congress, via its delegation of regulatory power to FEMA, has expressly preempted state law only as to handling-related claims.[38] And, "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted."[39]

---

[35] Mich. Canners & Freezers Ass'n, Inc. v. Agric. Mktg. & Bargaining Bd., 467 U.S. 461, 469 (1984) (internal citations and quotation marks omitted).

[36] Wright v. Allstate Ins. Co., 415 F.3d 384, 389 (5th Cir. 2005).

[37] See Goodman v. Fid. Nat'l Ins. Co., No. 06-cv-3799, 2008 WL 3863905, at *3 (E.D. La. Aug. 14, 2008) (collecting cases from multiple districts that reach this conclusion and describing holdings in the Eastern District of Louisiana on this issue as "consistent"); Jackson, 2006 WL 3332835, at *3–4 (collecting cases).

[38] See 44 C.F.R. pt. 61, app. A(1), art. IX ("This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by" FEMA regulations.) (emphasis added).

[39] Cipollone v. Liggett Group, Inc., 505 U.S. 504, 517 (1992). But see Geier v. Am. Honda Motor Co., 529 U.S. 861, 872–73 (2000) (emphasizing that a statement of express preemption does not foreclose the operation of ordinary conflict preemption principles); Freightliner Corp. v. Myrick, 514 U.S. 280, 289 (1995) (indicating that "at best" Cipollone supports only an inference, not a rule, "that an express pre-emption clause forecloses implied pre-emption").

We thus consider FEMA's "limited statement of preemption through the canon of statutory construction inclusio unius est exclusio alterius, indicating Congress's lack of interest in more broadly limiting state power."[40]  FEMA has expertise in drafting regulations that explicitly preempt state law, and yet in this instance it chose to confine the plain language of its preemption to handling.

Second, unlike in handling-based cases, permitting prosecution of procurement-related state-law tort suits does not impede the full purposes and objectives of Congress. "Clearly, the principal purpose in enacting the Program was to reduce . . . the massive burden on the federal fisc of the ever-increasing federal flood disaster assistance."[41]  Suits related to handling, or claims adjustment, generally seek money that will ultimately be disbursed from federal funds thereby directly conflicting with Congress's objective to reduce pressure on the federal fisc.[42]  In contrast, FEMA does not reimburse carriers for procurement-related judgments.[43] Additionally, FEMA extensively regulates the management of existing coverage while demonstrating no such interest in

---

[40]  United States v. 4,432 Mastercases of Cigarettes, More or Less, 448 F.3d 1168, 1189–90 (9th Cir. 2006) (discussing preemption in the context of a different statute, the Foreign Trade Zone Act).

[41]  Till v. Unifirst Fed. Sav. & Loan Ass'n, 653 F.2d 152, 159 (5th Cir. Aug. 1981).

[42]  44 C.F.R. § 62.23(i)(6) (2008); see C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 270 & n.9 (3d Cir. 2004) (citing 42 U.S.C. § 4017(d)(1)) (noting that Congress reimburses costs, including defense costs, for adjustment and payment of claims); Landry v. State Farm Fire & Cas. Co., 428 F. Supp. 2d 531, 534 (E.D. La. 2006) (describing the handling/procurement distinction as rooted in whether the federal fisc would be liable to plaintiffs); Messa v. Omaha Prop. & Cas. Ins. Co., 122 F. Supp. 2d 513, 521 (D.N.J. 2000) ("[F]EMA will reimburse WYO insurers for the claims and the claims handling, as well as for the costs of defending a lawsuit based on claims handling[.]").

[43]  Landry, 428 F. Supp. 2d at 534 (citing 44 C.F.R. pt. 62, app. A, art. IX (2008) ("Further, (i) if the claim against the Company is grounded in actions significantly outside the scope of this Arrangement or (ii) if there is negligence by the agent, FEMA will not reimburse any costs incurred due to that negligence.")); see 42 U.S.C. § 4081(c) ("The Administrator of [FEMA] may not hold harmless or indemnify an agent or broker for his or her error or omission.").

procurement: A WYO carrier has significant independence and "utilize[s] its own customary standards, staff, and independent contractor resources, as it would in ordinary and necessary conduct of its own business affairs, subject to the [Act and regulations.]"[44] For these reasons, state-law tort claims related to procurement do not interfere with Congress's objectives.[45] Federal law thus does not preclude Campo from pursuing his procurement-based suit that asserts a state-law cause of action for Allstate's allegedly negligent misrepresentations.[46]

## III. CONCLUSION

---

[44] Spence v. Omaha Indem. Ins. Co., 996 F.2d 793, 796 & n.15 (5th Cir. 1993) (quoting 44 C.F.R. § 62.23(e)) (2008); 44 C.F.R. § 62.23(a) ("WYO companies may offer flood coverage to policyholders . . . pursuant to their customary business practices . . . ."); see Reeder v. Nationwide Mut. Fire Ins. Co., 419 F. Supp. 2d 750, 763 & n.14 (D. Md. 2006) (noting that "WYO Companies are afforded significant independence when marketing flood insurance policies"); Houck v. State Farm Fire & Cas. Co., 194 F. Supp. 2d 452, 464 (D.S.C. 2002) ("[T]he rules and regulations reflect no interest in uniformity of standards for policy procurement conduct outside of the Arrangement's scope.").

[45] Cf. Wright v. Allstate Ins. Co., 415 F.3d 384, 389 (5th Cir. 2005) (The "[P]rogram [is] a 'child of Congress, conceived to achieve policies which are national in scope, and . . . the federal government participates extensively in the [P]rogram both in a supervisory capacity and financially . . . .'" (quoting West v. Harris, 573 F.2d 873, 881 (5th Cir. 1978))).

[46] Even though "[w]e may affirm a summary judgment on any ground supported by the record," Holtzclaw v. DSC Commc'ns Corp., 255 F.3d 254, 258 (5th Cir. 2001), on the facts of the instant case, no such basis exists. Allstate contends that any reliance on its representations was unreasonable as a matter of law because Campo had actual knowledge of the policy's expiration. And, it is somewhat troubling that Campo knew of his policy's expiration and could have simply paid the premium, but failed to do so. Yet, the district court has already determined that "the error of [Campo's] thinking was compounded by defendant and its actions." We leave to the district court's sound judgment on remand whether a genuine issue of material fact for trial exists.

We also leave to the district court to decide in the first instance whether Campo's equitable estoppel claim would implicate federal funds in a manner unlike that of his negligent misrepresentation claim. If federal funds are implicated, Campo's equitable estoppel claim would be barred. See Wright, 415 F.3d at 387–88 (holding that equitable estoppel is "inapplicable" because "'the payment of money from the Treasury must be authorized by a statute'" (quoting Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 424, 426 (1990))). It is at least plausible that equitable estoppel would prevent Allstate from asserting that Campo's policy expired, thus resulting in payment of a claim that FEMA may reimburse. It is likewise plausible that because Campo's equitable estoppel claim is based on Allstate's allegedly tortious acts regarding procurement, FEMA would not reimburse Allstate.

12

We reverse the district court's grant of Allstate's motion for summary judgment, and we remand for further proceedings consistent with our holding that federal law does not preempt Campo's suit.

REVERSED and REMANDED.

EMILIO M. GARZA, Circuit Judge, dissenting.

I disagree with the majority's characterization of Campo's claim as "procurement-related," as his case is clearly one of "claims handling" and thus preempted by federal law. For this reason, I respectfully DISSENT from the majority opinion.

It is undisputed by the parties that Campo received notice that his policy was about to expire, and that he was required to pay a renewal premium in order to renew his policy. It is also undisputed that Campo failed to pay the premium by designated date, August 13th. Campo knew he had a 30-day grace period[1] that ended on September 13th, and testified in his deposition that he intended to pay the premium before that date. Hurricane Katrina struck before September 13th, and FEMA mandated an additional 90-day extension to meet the deadline, thus giving Campo until December 12th to pay the premium. At any time until December 12th, Campo could have paid his renewal premium and continued his coverage with no break—the only requirement necessary for Campo to have received payment on his claim was that he pay his premium, which he failed to do. Campo filed a claim under the policy soon after Katrina hit, and now argues that his own failure to pay his renewal premium renders this case one of "procuring" a new policy rather than the "handling" of an existing claim.

The majority opinion posits that because the policy had expired, the claim filed by Campo was merely a "fictitious" one. This (mis)characterization ignores the 120-day grace period that was in effect. As Campo himself admitted in his deposition, he often utilized the grace period in order to make late payments. Though Campo never paid the renewal premium, he testified that he assumed that the insurance was in place until the end of the 30-day grace period and thus

---

[1] An automatic 30-day grace period applied. 44 C.F.R. pt. 61 app. A(1), art. VII(H)(2)(2008).

14

that damage due to Katrina was covered by the policy. Clearly, then, his later dealings with Allstate were with respect to what he regarded (and what Allstate regarded[2]) as an existing claim) ) a quintessential situation of claims "handling."

The grace period given to Campo, which effectively kept his policy "live" (as at any point he could have paid the premium and obtained coverage for damage caused by Katrina) until December 12th, militates strongly in favor of finding this claim to be handling-related rather than procurement-related. There is no indication from the record that Campo intended to "procure" a brand-new policy. Indeed, Campo could not have been attempting to do so, as there is a 30 day waiting period for the effective date of a new policy,[3] meaning that a new policy would have not have retroactively affected Campo's claim for damages incurred from Hurricane Katrina. Thus, there is a logical and legal inconsistency to the majority's attempt to cast Campo's efforts to settle his claim as "procurement" of a new policy; Campo's state law claims of detrimental reliance, negligence and bad faith damages clearly relate to the policy in effect when Hurricane Katrina struck, but under the majority's view would be allowed to go forward in connection with a policy that had not yet come into existence and could have nothing to do with damages arising from Hurricane Katrina.

Finally, contra the majority, the federal regulations speak to the situation at hand. Where, as here, the insurance company properly sent notice that the policy was set to expire and that a renewal premium was required, the heart of the claim—the effect of the nonpayment of a renewal premium—is clearly set out

---

[2] Allstate also treated the claim as an existing one, sending Campo a letter indicating that it had evaluated the claim and requested the NFIP to issue a check to Campo for the policy limit of $98,200.

[3] 44 C.F.R. 61.11(c) ("Except as provided by paragraphs (a) and (b) of this section, the effective date and time of any new policy or added coverage or increase in the amount of coverage shall be 12:01 a.m. (local time) on the 30th calendar day after the application date and the presentment of payment of premium; for example, a flood insurance policy applied for with the payment of the premium on May 1 will become effective at 12:01 a.m. on May 31.")

in the SFIP.[4] Because Campo's claim is covered by the federal rules, it is preempted.[5]

---

[4] The SFIP states:
Policy Renewal
1. This policy will expire at 12:01 a.m. on the last day of the policy term.
2. We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.
3. If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:
> a. If you or your agent notified us, not later than one year after the date on which the payment of the renewal premium was due, of non-receipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.
> b. If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the policy. In that case, the policy will remain an expired policy as of the expiration date shown on the Declarations Page.
4. In connection with the renewal of this policy, we may ask you during the policy term to recertify, on a Recertification Questionnaire we will provide to you, the rating information used to rate your most recent application for or renewal of insurance.
44 C.F.R. pt. 61, app. A(1), art. VII(H)(2008). [Emphasis added.]

[5] The district court cases cited by the majority are distinguishable from the instant case on the facts. In Landry v. State Farm Fire & Cas. Co., 428 F.Supp.2d 531, 535 (E.D.La. 2006), the plaintiffs, having transferred their policy to a new insurance agent, sued over the new agent's failure to obtain contents coverage for their home despite assurances from the agent that they were fully covered. In Jackson v. State Farm Fire & Cas. Ins. Co., 2006 WL 3332835 (E.D.La., November 9, 2006), plaintiffs alleged that the insurance agent had breached a duty in failing to renew their flood insurance policy. In Meza v. All State Ins. Co., 2007 WL 595900 (W.D.La., February 15, 2007), the plaintiffs sued Allstate for the actions of its agent in neglecting to make changes to reflect that the mortgage on the insurance policy was cancelled. As a result, the insurance policy had expired for more than a year, with no notice to the plaintiffs, when Hurricane Katrina struck and destroyed the contents of the plaintiffs' home. All three cases implicated the insurer's extra-contractual (i.e. not regulated by federal law) duties to the plaintiffs. See Landry, 428 F.Supp.2d at 535 ("State Farm's liability arises through that agent and his extra-contractual duty of reasonable diligence; therefore, the Plaintiffs' claims do not result from, relate to, or arise from State Farm's compliance with FEMA regulations under an NFIP policy.") Here, by contrast, Allstate provided actual notice to Campo that he had to pay a renewal premium in order to continue his coverage, and Campo's failure to pay the premium is, as previously stated, squarely within the scope of the federal regulations.

Claims more akin to Campo's have been treated by district courts in this Circuit as handling-related and thus preempted by federal law. See Fernandez v. Chase Manhattan Mortg. Corp., 2008 WL 1927607 (E.D.La., April 30, 2008)(holding that plaintiff's state law

Allstate complied with the procedures established by the SFIP. The operation of the 120-day grace period)) again, mandated by federal law)) during which, at any time, Campo could have paid his premium and recovered for damages caused by Katrina, makes this case a clear example of a "handling"-related claim and is thus preempted under Wright v. Allstate Ins. Co., 415 F.3d 384 (5th Cir. 2005).[6] Accordingly, I would affirm the district court's grant of summary judgment to Allstate, and thus I respectfully DISSENT from the majority.

---

claims against insurer were preempted where insurer provided expiration and renewal notices and plaintiff took no action); Welsch v. Hartford Fire Ins. Co., 2007 WL 2406985 (E.D.La., August 21, 2007)(holding that claim that insurance company improperly cancelled policy was handling-related); Newman v. Allstate Ins. Co., 2006 WL 2632116 (E.D.La. September 12, 2006)(bad faith and breach of contract claims related to allegedly improperly cancelled policy are handling-related).

[6] Because I find the issue governed by existing precedent, I would not reach the question of whether "procurement"-related claims are preempted by federal law.