**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 23, 2012

Lyle W. Cayce
Clerk

No. 11-60260

JAMES P. GRISSOM,

Plaintiff - Appellee

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before STEWART, CLEMENT, and GRAVES, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

James Grissom purchased flood insurance for his home in Pascagoula, Mississippi under the Federal National Flood Insurance Program ("NFIP"). Grissom was eligible for a preferred risk insurance policy, but did not know about his eligibility. Following the destruction of his home in Hurricane Katrina, Grissom sued Liberty Mutual for negligent misrepresentation to recover the difference between the coverage he had and the coverage he could have purchased under the preferred risk policy. The district court concluded

No. 11-60260

that Grissom's claim was not preempted by federal law and sent the case to the jury which awarded Grissom $212,900 in compensatory damages. We REVERSE the ruling of the district court with instructions to DISMISS Grissom's claim.

## FACTS AND PROCEEDINGS

In 1977 Grissom first purchased flood insurance through the Federal Emergency Management Agency's ("FEMA") Write Your Own ("WYO") flood insurance program under the National Flood Insurance Act. Liberty Mutual was Grissom's WYO insurance provider when Hurricane Katrina severely damaged his property. This court has previously discussed the WYO program:

> By enacting the National Flood Insurance Act of 1968, Congress established the Program to make flood insurance available on reasonable terms and to reduce fiscal pressure on Federal flood relief efforts. FEMA administers the Program. Within the Program, the WYO program allows private insurers to issue flood insurance policies in their own names. Under this framework, the Federal government underwrites the policies and private WYO carriers perform significant administrative functions including "arrang[ing] for the adjustment, settlement, payment and defense of all claims arising from the policies." WYO carriers must issue policies containing the exact terms and conditions of the [Standard Flood Insurance Policy ("SFIP")] set forth in FEMA regulations. Additionally, FEMA regulations govern the methods by which WYO carriers adjust and pay claims. Although WYO carriers play a large role, the government ultimately pays a WYO carrier's claims. When claimants sue their WYO carriers for payment of a claim, carriers bear the defense costs, which are considered "part of the . . . claim expense allowance"; FEMA reimburses these costs. Yet, if "litigation is grounded in actions by the [WYO] Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence," then such costs will not be reimbursable to the WYO carrier.

*Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009) (internal citations omitted). WYO insurance companies are subject to the *Federal Emergency Management Agency, Federal Insurance Administration, Financial*

No. 11-60260

*Assistance/Subsidy Arrangement* (the "Arrangement"), a set of terms and conditions between FEMA and the private insurers governing the program.  44 C.F.R. pt. 62 app. A.

In 1989 a preferred risk policy became available for the flood zone on which Grissom's home was located, but Grissom is unsure if he was ever explicitly offered the preferred risk policy.  There is no indication that Liberty Mutual affirmatively informed Grissom he was eligible for preferred coverage.  In 2004 he renewed his Liberty Mutual policy with covered total loss of up to $121,200 for a $531 premium.  Had he been enrolled in the preferred risk policy, he would have had $350,000 in total covered loss for a $317 premium.  The 2004 renewal notice from Liberty Mutual mentioned the existence of preferred rate policies, but did not indicate whether Grissom was eligible.

In August 2005, Grissom's home was destroyed by Hurricane Katrina.  Liberty Mutual paid Grissom's $121,200 claim, the policy maximum.  Grissom then sued Liberty Mutual in Mississippi state court to recover the difference between the coverage he had and the coverage he could have had under the preferred risk policy.  Liberty Mutual removed the case to the Southern District of Mississippi which denied Liberty Mutual's Rule 12 and Rule 56 motions and submitted the case to the jury.  Liberty Mutual appeals.

## STANDARD OF REVIEW

Liberty Mutual is not appealing facts determined by the jury, but rather the legal conclusions of the district judge which we review *de novo*.  *City of New Orleans v. Mun. Admin. Servs.*, 376 F.3d 501, 506 (5th Cir. 2004) ("We review conclusions of law–including contractual interpretations–*de novo*.").  Determining whether federal funds were at stake is based on whether the Arrangement—a contract—bound FEMA to pay the expenses.  The federal preemption question and the question of Mississippi law are legal questions this court reviews *de novo*.

3

No. 11-60260

## DISCUSSION

We address three of the issues Liberty Mutual raised on appeal: (1) whether the district court erred by determining this was a policy procurement case rather than a claims handling case subject to federal preemption; (2) whether the district court erred by allowing this case to go to a jury when federal funds were at risk; and (3) whether Mississippi law recognizes negligent misrepresentation in the insurance context.

### I.    Federal Preemption

Liberty Mutual argues the district court erred in holding that this dispute related to the procurement of insurance which is not preempted by federal law under *Campo.*  Grissom alleges the district judge would not have permitted this case to go to the jury had it not been procurement related.  Grissom asserts that *Campo* controls and that there is no preemption because Liberty Mutual's negligence occurred while seeking to renew Grissom's policy rather than in the course of some other policy administration task.

We have held "[f]ederal law preempts 'state law tort claims arising from *claims handling* by a WYO.'" *Campo*, 562 F.3d at 754 (emphasis in original) (quoting *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir. 2005)).  And further that "federal law does not preempt state-law procurement-based claims." *Id.* at 757.  The dispute is whether Liberty Mutual's failure to inform a current customer, Grissom, he might be eligible for a richer insurance policy constitutes "claims handling" or is "insurance procurement."  If it is claims handling, Grissom's suit is preempted.[1]

---

[1] Liberty Mutual also introduces a third category, "policy administration" (supported by the FEMA memorandum discussed *infra* in footnote 2) which it claims also should receive federal preemption.  This circuit has not recognized the "policy administration" category previously and we do not adopt the "policy administration" category here because it is unnecessary to our disposition of the appeal.

No. 11-60260

Our precedent distinguishes between the two categories.  In *Wright*, this court labeled interactions between the insurer and an insured seeking payment for hurricane damage to his home "claims handling."  *See Wright*, 415 F.3d at 389-90.  Further, in *Borden v. Allstate Insurance Company*, we held that a dispute surrounding the receipt of a renewal notice was claims handling.  589 F.3d 168, 173 n.2 (5th Cir. 2009).  On the other hand, in *Campo*, the panel majority held that an individual whose insurance had lapsed was a former and potential future customer of Allstate and thus the interactions between Campo and the insurer related to the *procurement* of insurance.  *Id.* at 756 ("Allstate's alleged misrepresentations occurred when Campo's only relationship with Allstate was that of both a *former* and a *potential future* policyholder.").  Grissom erroneously believes *Campo* stands for the proposition that all renewals are procurement despite *Campo*'s clear holding that the lapse in coverage turned what would otherwise be a renewal into the procurement of a new policy.[2]  *Cf. Campo*, 562 F.3d at 756 ("Campo's coverage had *expired*; there was thus nothing

---

[2]  FEMA also issued a memorandum following *Campo* stating the intent of its regulations was

> to preempt state law claims related to policy formation, *renewal, and administration arising from allegations of WYO company error . . . .* Rather than its application in *Campo*, *Federal preemption should apply not just to claims handling activities, but also to policy administration.* Specifically, preemption should apply to the nationally uniform and FEMA-mandated processes governing policy issuance and *the administration of existing flood policies, including but not limited to* rating, *renewal*, transfer, non-renewal, cancellation, or reformation.

*See* U.S. DEPARTMENT OF HOMELAND SECURITY, MEMORANDUM WYO PROGRAM BULLETIN W-09038, NOTICE OF FEMA'S INTENT TO ADOPT, BY REGULATION, A CLARIFICATION OF THE CURRENT EXPRESS PREEMPTION CLAUSE OF THE STANDARD FLOOD INSURANCE POLICY (2009) available at: http://www.nfipiservice.com/stakeholder/pdf/bulletin/w-09038.pdf (emphasis added).   While this memorandum is not controlling, FEMA's desire to publish such a memorandum less than three months after this court's opinion in *Campo* indicates the agency's intent that federal preemption apply to renewals of flood insurance and other activities which occur after the initial policy is procured.

to continue. Instead, as a former policyholder, Campo would have had to *procure* flood insurance.").

The key factor to determine if an interaction with an insurer is "claims handling" is the status of the insured at the time of the interaction between the parties. If the individual is already covered and in the midst of a non-lapsed insurance policy, the interactions between the insurer and insured, including renewals of insurance, are "claims handling" subject to preemption. *See Wright*, 415 F.3d at 389-90; *Borden*, 589 F.3d at 173 n.2.

Grissom was insured by Liberty Mutual at the time of his interactions with Liberty Mutual. He filed a claim for coverage which was granted and paid in full. Only after Grissom discovered his eligibility for additional subsidized coverage did he raise the negligent misrepresentation claim to obtain additional covered payments. Grissom is alleging that while he was already insured, his insurer should have been more proactive in informing him of his eligibility for additional subsidized flood insurance coverage. Because Grissom's dispute with Liberty Mutual relates to his renewal of a policy already in place—claims handling, not the initial procurement of the insurance policy—*Campo* does not control and we hold that Grissom's state law claim is preempted.

## II.    Federal Funds

Although we hold that Grissom's claim is preempted by federal law, we proceed to consider whether cases under the NFIP may be heard by a jury. Liberty Mutual alleges that the district court erred in submitting this case to the jury because the federal government would be required to pay any damages award and has not affirmatively and unambiguously granted the right to a jury trial for such matters. *See Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). Grissom does not dispute that if federal funds are at stake a jury trial is inappropriate, but alleges FEMA is not obligated to pay damage awards that result from omissions by WYO insurance companies because the insurance

company receives a commission for signing up insureds.  By submitting the case to the jury, the district court implicitly determined that the Arrangement which forms a contract between WYO insurers and FEMA does not require FEMA to either defend or indemnify Liberty Mutual.

The NFIP establishes private insurers "as fiscal agents of the United States."  42 U.S.C. § 4071(a)(1).  The federal government pays flood insurance claims and reimburses costs, including defenses costs, for adjustment and payment of claims by private insurers in the WYO program.  *See Campo*, 562 F.3d at 754 n.15; 44 C.F.R. pt. 62 app. A. art. III (D)(1)-(2).  The federal government will both indemnify and defend WYO insurers in the program for many insurance and litigation expenses unless the "'litigation is grounded in actions by the [WYO] Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence.'"  *Id.* at 754 (quoting 44 C.F.R. pt. 62, app. A, art. III(D)(3)(a)). The question is whether there is a presumption FEMA will cover the expenses.

All NFIP policies are subject to the Arrangement which provides specific requirements for insurance companies to become and remain eligible to write policies under the NFIP.  44 C.F.R. pt. 62 app. A.  The Arrangement also explains the relationship between the federal government and the private insurance companies.  Liberty Mutual and Grissom read the Arrangement to stand for alternative presumptions: Liberty Mutual claims the Arrangement presumes the government will defend and indemnify WYO insurers while Grissom claims the Arrangement presumes WYO insurers bear their own costs.

We review the Arrangement to identify the presumptive payor.  The Arrangement requires companies to notify FEMA of litigation expenses and requires FEMA's Office of the Chief Counsel to ensure the litigation is based on actions within the scope of the Arrangement and does not involve agent negligence.  44 C.F.R. pt. 62 app. A. art. III(D)(2)-(3)(a).  If and only if FEMA's

No. 11-60260

Chief Counsel, along with the Federal Insurance Administrator, determine "that the litigation is grounded in actions by the Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence" the Federal Insurance Administrator has thirty days to inform the insurer that the litigation expenses (in whole or in part) will not be covered. (D)(3)(a)-(d). Unless FEMA explicitly notifies the insurance company of its intent not to defend or indemnify, FEMA is presumed to pay the litigation expenses and any resulting damages awards. In the absence of this document or even any allegation FEMA notified Liberty Mutual of its intent not to defend or indemnify, FEMA is assumed to be paying the expenses of the litigation.

The right to a jury trial has not been extended by the government to WYO cases. *See Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998); *see e.g. Newton v. Capital Assurance Corp.*, 245 F.3d 1306, 1312 (11th Cir. 2001) (". . . the line between  between a WYO company and FEMA is too thin to matter for the purposes of federal immunities such as the no-interest rule"). Because FEMA is presumed to be paying both the litigation expenses and any resulting damage award, the district court erred in submitting this case to the jury.

## III. Negligent Misrepresentation by Insurer in Mississippi

Although the state law claim is preempted, Grissom's negligent misrepresentation by an insurer claim also does not find a basis in Mississippi law. In Mississippi, a plaintiff must meet five factors to succeed in a claim of negligent misrepresentation:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

*Mladineo v. Schmidt*, 52 So. 3d 1154, 1164-65 (Miss. 2010) (quotation marks and citation omitted). Liberty Mutual argues that Mississippi law does not recognize a claim for negligent misrepresentation against an insurer because an insurer has no fiduciary duty to insureds and no affirmative duty to advise buyers about their individual insurance needs (factor 3). *Id.* at 1163. Grissom counters that insurers have a duty to use reasonably prudent diligence and care in "business transactions" and thus misrepresentation may be alleged for failure to disclose information.

There is no Mississippi law directly on point, but Mississippi courts have spoken to the relationship between insurers and insureds and have also discussed the duties owed to the insured. The Mississippi Court of Appeals explained the Mississippi legal principal that the purchase of insurance is an arms-length transaction and no fiduciary duty arises between an insurance company or its agents and the purchaser of the insurance. *Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1049 (Miss. Ct. App. 2007). The court stated:

> In Mississippi, a claim of fraud by omission arises only where the defendant had a duty to disclose material facts purportedly omitted. This duty generally arises only where there is a fiduciary relationship between the parties. . . . "Under Mississippi law, there is no fiduciary relationship or duty between an insurance company and its insured in a first party insurance contract."

*Id.* (quoting *Langston v. Bigelow*, 820 So. 2d 752, 756 (Miss. Ct. App. 2002)). Further,

> we do not find that insurance agents in Mississippi have an affirmative duty to advise buyers regarding their coverage needs. . . . [I]mposing liability on agents for failing to advise insureds regarding the sufficiency of their coverage would remove any burden from the insured to take care of his or her own financial needs.

*Mladineo*, 52 So. 3d at 1163.

Liberty Mutual is not required to provide advice to insurance customers. Because Liberty Mutual was not offering insurance advice, was not a fiduciary

No. 11-60260

of Grissom, and did not offer any statement to Grissom to imply the lack of alternative insurance options, Mississippi law would not recognize negligent misrepresentation as a cause of action against Liberty Mutual and the submission of negligent misrepresentation to the jury was error.

## CONCLUSION

For the foregoing reasons we REVERSE the ruling of the district court with instructions to DISMISS Grissom's claim.