# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 16, 2020

Lyle W. Cayce
Clerk

No. 19-20039

Younas Chaudhary; Bushra Chaudhary,

*Plaintiffs—Appellants*,

*versus*

Arthur J. Gallagher & Company; Chris Bettina,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-2179

---

Before Clement, Higginson, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Plaintiffs—Appellants, Younas and Bushra Chaudhary, appeal the district court's dismissal of their claims as preempted by federal law governing federal flood insurance. As stated herein, WE AFFIRM IN PART AND VACATE AND REMAND IN PART.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-20039

I.

Because their home in Spring, Texas, suffered extensive damage as a result of Hurricane Harvey, Plaintiffs—Appellants Younas and Bushra Chaudhary sought to recover insurance proceeds from a standard NFIP flood insurance policy and a private excess flood insurance policy. The NFIP claim was paid in full—$250,000 for the structure and $100,000 for contents. However, having determined that the Chaudharys did not have an excess flood insurance policy, Chubb & Son, Inc., d/b/a Chubb Group of Insurance Companies ("Chubb"), denied the claim for excess flood insurance benefits.[1] Thereafter, the Chaudharys sued the insurer, Chubb, as well as the Chaudharys' insurance broker, Arthur J. Gallagher & Co. ("AJG"), and its agent, Chris Bettina ("Bettina"), in Texas state court. The Chaudharys allege claims under the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.01 *et seq.*, and the Texas Insurance Code, TEX. INS. CODE § 541.001, *et seq.*, as well as claims for common-law breach of fiduciary duty (against Bettina), misrepresentation, fraud, and negligence. After the suit was removed to federal court, the district court denied the Chaudharys' motion to remand and dismissed their claims with prejudice.[2]

The district court found the Chaudharys' claim against Chubb to be precluded by Texas's statute of limitations. TEX. CIV. PRAC. & REM.

---

[1] In its motion to dismiss, Defendant Bankers Standard Insurance Company indicated that the Chaudharys' complaints incorrectly identifies it as Chubb & Son, Inc., d/b/a Chubb Group of Insurance Companies. Because Bankers Standard Insurance Company nevertheless continued to refer to itself as "Chubb," the district court did the same. Because we have not been notified of a reason to change course, we likewise will continue to refer to the insurer as "Chubb."

[2] The district court's dismissal orders addressed the motion to dismiss filed by Chubb pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the motion for judgment on the pleadings filed by AJG and Bettina pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

§ 16.003(a). Even if not time barred, the district court concluded, the Chaudharys had not pleaded sufficient facts to state a viable claim against Chubb for failing to procure excess flood insurance coverage. The Chaudharys' claims against AJG and Bettina were determined to be preempted by federal law.

On appeal, the Chaudharys no longer contest the district court's dismissal of their claims against Chubb. They maintain their challenge, however, to the district court's dismissal of their claims against AJG and Bettina.[3] On the instant record, we affirm in part and vacate and remand in part. Specifically, we affirm the district court's dismissal of the Chaudharys' claims premised upon "claims handling" under the standard NFIP flood insurance policy. On the other hand, we vacate the district court's federal preemption ruling relative to AJG's and Bettina's alleged failure to maintain and procure sufficient excess flood insurance to provide $20 million of coverage and remand for further proceedings consistent with this opinion.

## II.

The Chaudharys argue that that their claims do not relate to the NFIP policy that was paid, but instead deal with only "(1) an excess flood policy that had already lapsed at the time of Hurricane Harvey due to the negligence of [AJG] and Bettina;" as well as a hypothetical *additional* excess policy that AJG and Bettina should have procured, given the value of the Chaudharys' home, but did not; and "(2) the failure [of AJG and Bettina] to procure or inform [the Chaudharys] that even the [lapsed] excess policy . . . was woefully inadequate to insure [their] home." Although their complaint alleges details

---

[3] The instant appeal initially included the district court's dismissal of Chubb. During briefing, however, the Chaudharys advised that they no longer challenge that aspect of the district court's rulings. *See* Appellants' Brief at 6-7 n.3. Accordingly, that component of the Chaudharys' appeal is deemed abandoned.

about their NFIP policy (i.e., limits of "$250,000 for structure, and $100,000 for contents," and that it was written in 2015 and renewed in 2016), it does not include any specifics regarding either the lapsed excess policy or additional excess policy that AJG and Bettina allegedly were meant to procure. Rather, the Chaudharys' assertions simply focus on the alleged nature of the relationship between them, AJG, and Bettina; the Chaudharys' reported reliance upon representations made by AJG and Bettina regarding the extent of the Chaudharys' flood insurance coverage; and AJG's and Bettina's alleged awareness of the $20 million value of their home and contents.

The Chaudharys contend that they did not worry about the financial impact of flood damage when they were evacuating for Hurricane Harvey, because of the "full" and "excess" coverage assurances reportedly received from AJG and Bettina. The Chaudharys allege that they had "formed a special trust in Bettina and [AJG] based on their expertise, their services over the years, and their representations about their ability to provide thorough and comprehensive insurance to protect [the Chaudharys] from hazards such as floods, hurricanes, and the like." The Chaudharys explain that they had asked AJG and Bettina to "provid[e] appropriate insurance coverage for [their] home, which including contents, is valued at nearly $20 million." And because of the "level of trust" between AJG, Bettina, and the Chaudharys, AJG and Bettina "would customarily take care of the [Chaudharys'] insurance needs without consulting [them] about all of the specific details." The Chaudharys state that AJG and Bettina "never disclosed any limitations or exclusions to [their] insurance policy [or policies]."

The Chaudharys maintain that AJG and Bettina "continuously and expressly assured [them] that they would be fully covered in the event of damage and that there were sufficient insurance policies in place to cover both [their] home and its contents." AJG and Bettina allegedly had visited

the Chaudharys "many times in person, talked to them regularly on the phone, and visited their house to assess its contents and value in order to place insurance for it." The Chaudharys also say that when Hurricane Harvey was approaching, their son, who lives at the house, contacted Bettina to confirm that the family would be fully covered by insurance in the event that their home sustained damage during the storm, to which Bettina "expressly stated that [the Chaudharys] would be fully covered in the event that their home sustained any type of damage from the storm, including flooding."

In granting the dismissal motion filed by AJG and Bettina, the district court referenced the distinction that this court has made between state-law claims involving *claims handling* and those concerning *policy procurement*.. That is, state-law "handling" claims related to FEMA-backed NFIP policies are preempted by federal law, but "procurement" claims are not. Citing our jurisprudence, the district court concluded the Chaudharys had failed to plead facts sufficient to demonstrate that their claims were *not* preempted "handling" claims related to the NFIP policy. In particular, the district court emphasized that the Chaudharys' amended complaint was especially deficient in its timeline and description of coverage and coverage events, which, the district court reasoned, is "the key factor" in distinguishing between "handling" and "procurement" claims.

## III.

Rule 12(c) states that "a party may move for judgment on the pleadings" after "the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "A motion brought pursuant to [Federal Rule of Civil Procedure] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th

Cir. 2002). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Id.* The Rule 12(c) standard for judgment on the pleadings is the same as the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 12(b)(6) (stating that claims will be dismissed pursuant to Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court must view the well-pleaded facts in the light most favorable to the plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *see also Iqbal*, 556 U.S. at 678. Further, a "complaint must allege 'more than labels and conclusions,'" *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555), and will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). And though "we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## IV.

We begin our analysis with a word regarding jurisdiction. In the district court, the Chaudharys filed a motion to remand, contending neither

diversity of citizenship nor federal question jurisdiction was present. *See* 28 U.S.C. §§ 1331, 1332, 1441. Specifically, the Chaudharys argued that their claims arise under state law, involve procurement rather than claims handling, and, thus, are not preempted by federal law. They additionally maintain that Bettina was properly joined as a defendant such that his Texas citizenship precludes federal diversity jurisdiction. The district court denied the motion, concluding federal question jurisdiction exists.

On appeal, the Chaudharys agree that certain of their allegations involve "handling" and "settlement" (of their insurance claim asserted against an insurer), are preempted by federal law, and were properly dismissed. *See* Appellants' Brief at 9, 20 nn. 4–5 (citing Am. Compl. ¶¶ 38–41, 48). They likewise confirm that they "do not question [the] aspect of the [district court's] ruling" determining that "it possessed federal question jurisdiction over the handling claims." *Id.* at 24. Rather, the Chaudharys simply ask that jurisdiction be revisited by the district court if we reverse the preemption rulings that remain in dispute. *Id.*

On this record, we find no reason to question the district court's denial of the Chaudharys' motion seeking remand to state court on jurisdictional grounds. Of course, should the district court determine, on remand from this court, that the remainder of the Chaudharys' claims are not preempted by federal law and diversity jurisdiction is lacking, it may likewise consider whether the discretionary supplemental jurisdiction provided by 28 U.S.C. § 1367 should be exercised.

V.

We now turn to the Chaudharys' claims against AJG and Bettina. The possibility of federal preemption stems from the National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. § 4001 *et seq.*, which established the National Flood Insurance Program ("NFIP"). As discussed in many of our prior opinions, the NFIP, administered by the Federal Emergency

Management Agency ("FEMA"), was created by Congress "to make flood insurance available on reasonable terms and to reduce fiscal pressure on federal flood relief efforts." *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). The NFIP includes "Write-Your-Own" ("WYO") policies that allow private insurers to sell flood insurance policies that the federal government underwrites. *Id.* These private insurers are tasked with "arrang[ing] for the adjustment, settlement, payment and defense of all claims" arising from such policies. *Id.* (alteration in original) (quoting *Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 342 (5th Cir. 2005)).

The WYO policies must adhere exactly to the terms and conditions set forth in FEMA regulations. *Id.* (citing 44 C.F.R. §§ 61.4(b), 62.23(c)–(d) (2008); 44 C.F.R. pt. 61, app. A(1)) (setting forth the Standard Flood Insurance Policy ("SFIP") terms). FEMA regulations also govern WYO private insurers' payment and adjustment of claims. *Id.* And while the insurers selling WYO policies play "a large role," the federal government ultimately pays the claims. *Id.* The government also reimburses most private insurers' costs incurred defending themselves in WYO suits. *See id.* (citing 44 C.F.R. pt. 62, app. A, art. III(D)(3)(a) (defense costs are not reimbursable in "litigation [that] is grounded in actions by the [WYO] Company that are significantly outside the scope of this [a]rrangement, and/or involves issues of agent negligence")).

As emphasized by the district court, our preemption jurisprudence relating to the NFIP has distinguished between state-law claims involving "claims handling" and those involving "insurance procurement." *See, e.g.*, *Spong v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 787 F.3d 296, 299, 306 (5th Cir. 2015); *Grissom v. Liberty Mut. Fire Ins. Co.*, 678 F.3d 397, 400–01 (5th Cir. 2012); *Campo,* 562 F.3d at 754. One of the FEMA regulations governing the NFIP states that "all disputes arising from the *handling* of any claim *under the policy* are governed exclusively by the flood insurance regulations issued by

FEMA, the National Flood Insurance Act of 1968, and Federal common law." 44 C.F.R. Pt. 61, app. A(1), art. IX (emphasis added). Thus, federal law preempts state law claims concerning "claims handling" by a private WYO insurer.[4] *See Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir. 2005) (holding that "state law tort claims arising from claims handling by a WYO are preempted by federal law"); *Campo*, 562 F.3d at 754 (same).

However, our precedent dictates that claims concerning "policy procurement" are *not* preempted. *See Campo*, 562 F.3d at 758 (Congress "chose to confine the plain language of its preemption to handling" and "unlike in handling-based cases, permitting prosecution of procurement-related state-law [] suits does not impede the full purposes and objectives of Congress"). According to *Campo*, the rationale for this disparity in treatment is explained, at least in part, in the differing impact on federal funds. *See id.*, 562 F.3d at 758 ("Suits relating to handling, or claims adjustment, generally seek money . . . ultimately . . . disbursed from federal funds thereby directly conflicting with Congress's objective to reduce pressure on the federal fisc. In contrast, FEMA does not reimburse carriers for procurement-related judgments.") (citing 44 C.F.R. § 62.23(i)(6) (2008) (WYO defense costs will be part of claim expense allowance); 42 U.S.C. § 4017(d)(1) (providing for payment of costs for adjustment and payment of claims); 44 C.F.R. pt. 62, app. A, art. IX (2008) (FEMA will not reimburse costs incurred due to agent negligence); 42 U.S.C. § 4081(c) (FEMA "may not hold harmless or indemnify an agent or broker for his or her error or omission")). "Additionally, FEMA extensively regulates the management of existing coverage while demonstrating no such interest in procurement." *Campo*, 562 F.3d at 758.

---

[4] "Federal regulations have no less pre-emptive effect than federal statutes." *In re Cajun Elec. Power Coop., Inc.*, 109 F.3d 248, 254 (5th Cir. 1997).

In *Grissom*, this court undertook to clarify the distinction that our jurisprudence has drawn between state-law "handling" claims and those involving "procurement," explaining:

> The key factor to determine if an interaction with an insurer is "claims handling" is the status of the insured at the time of the interaction between the parties. If the individual is already covered and in the midst of a non-lapsed insurance policy, the interactions between the insurer and insured, including renewals of insurance, are "claims handling" subject to preemption.

*Grissom,* 678 F.3d at 401.

The record reveals that, over the course of this action, the Chaudharys arguably have sought to distance themselves from certain aspects of their original and amended complaints. Nevertheless, on appeal, they admit that their pleadings include allegations of inadequate claims handling, relative to the standard NFIP flood insurance policy, and, as referenced above, do not challenge the district court's dismissal of at least some of them. Indeed, the Chaudharys concede that the district court properly dismissed the portions of their state-law claims related to "claims handling." *See* Appellants' Brief at 20 n.4 (conceding that the portions of Appellants' Deceptive Trade Practices Act claims alleging "handling claims, such as allegations related to investigation and resolution of [their] claim . . . are preempted and were properly dismissed"); *id.* at 20 n.5 (same concerning the portions of their Texas Insurance Code claims alleging "settlement"); *id.* at 24 ("Now that the handling claims have been dismissed, only the state law claims against the agents remain."). The district court correctly determined that the Chaudharys' Deceptive Trade Practices Act and Texas Insurance Code claims included allegations of "claims handling" preempted by federal law. *See Grissom*, 678 F.3d at 401.

Without parsing the entirety of the Chaudharys' pleadings against their appellate concessions, we are satisfied that the district court's determination that certain of the Chaudharys' assertions allege improper "handling" of claims, under the standard NFIP flood insurance policy, does not warrant reversal. *See* September 28, 2018 Mem. Op. at 9 (citing Orig. Pet. at ¶¶ 16(e)–(f), 17–19; December 20, 2018 Mem. Op. at 23–24, 26–27 (citing Am. Compl. at ¶¶ 38-39, 48). Accordingly, we affirm that aspect of the district court's preemption determination.

On the other hand, proper resolution of the Chaudharys' allegations that, unbeknownst to them, AJG and Bettina allowed a previous private excess flood insurance policy to lapse *and* failed to procure additional private excess flood insurance coverage sufficient to fully insure the $20 million home and contents, is not as straightforward. Specifically, in characterizing these allegations as preempted "handling" claims related to the NFIP policy, the district court seemingly applied *Grissom*'s "interaction timeline" analysis without accounting for the fact that the regulatory language interpreted in *Grissom* expressly refers to the "handling of any claim under the [NFIP] policy," but makes no mention of private excess flood policies. Furthermore, the policy at issue in *Grissom* was, in fact, a *federal* preferred risk flood insurance policy, as opposed to the *private* excess policy not procured here. Indeed, it is our understanding (as discussed with counsel at oral argument) that the NFIP does *not* even offer *federal* flood insurance coverage in an amount exceeding the $250,000/$100,000 limits of the standard NFIP policy that the Chaudharys had here. Additionally, the defendant in *Grissom* was the NFIP WYO insurer, not an independent broker or agent.[5]

---

[5] On appeal, the Chaudharys argue that AJG's and Bettina's statuses as broker and agent, respectively, rather than WYO insurers—particularly given the differing risk to federal funds—is alone a sufficient basis to preclude federal preemption. This assertion,

No. 19-20039

Lastly, although the district court found the Chaudharys' allegations regarding the timeline, coverage, and coverage events insufficient to state unpreempted claims regarding excess flood insurance coverage, it is not apparent whether the district court did not allow the Chaudharys an opportunity to amend their pleadings, in hopes of stating viable claims, because the Chaudharys had not sought leave to do so, because they already had had an opportunity to amend, or because of some other reason on the record before it.

Given the foregoing, we find it appropriate to vacate and remand the district court's judgment relative to the private excess policies for further consideration in the first instance.  To do otherwise would risk overstepping our role as an appellate court.

AFFIRMED IN PART. VACATED AND REMANDED IN PART.

---

however, was not presented to the district court. Considering that the Chaudharys characterize this issue, which dominates their appellate briefs, as a matter of first impression, but offer no explanation or justification for not raising it before the district court, we will not undertake to assess it further at this juncture.  Rather, in this context, that argument is best presented, in the first instance, to the district court.  We mention it only to note it as a factor for possible consideration by the district court, on remand, in reassessing the proper application of *Grissom*'s principles here.