# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1415

KAY BARNETT, ET UX.

VERSUS

FIDELITY NATIONAL PROPERTY & CASUALTY CO., ET AL.

**********

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-18494
HONORABLE PENELOPE QUINN RICHARD, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Marc T. Amy, Judges.

**AFFIRMED.**

Gerald J. Nielsen
Keith M. Detweiler
Nielsen, Carter & Treas, LLC
3838 North Causeway Boulevard, Suite 2850
Metairie, LA   70002
(504) 837-2500
COUNSEL FOR DEFENDANT/APPELLANT:
    Fidelity National Property & Casualty Insurance Company

Carl E. Hellmers, III
Frilot L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, LA   70163-3600
(504) 599-8035
COUNSEL FOR DEFENDANT/APPELLANT:
    Insurance Unlimited of Louisiana, Inc.

**Terrence J. Lestelle**
**Lestelle & Lestelle, APLC**
**3421 North Causeway Boulevard, Suite 602**
**Metairie, LA   70002**
**(504) 828-1224**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Kay Barnett**
    **Barry Barnett**

**Jeffery B. Struckhoff**
**Galloway, Johnson, Tompkins, Burr & Smith**
**One Shell Square**
**701 Poydras Street, 40th Floor**
**New Orleans, LA   70139**
**(504) 525-6802**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Kay Barnett**
    **Barry Barnett**

**AMY, Judge.**

After the plaintiffs sustained damage to their Cameron Parish beach house as a result of Hurricane Ike, their flood insurance provider declared the policy void *ab initio*. They filed suit against their insurance agency and the flood insurance provider, seeking damages for tort and contractual claims. The trial court denied pre-trial exceptions regarding subject matter jurisdiction and preemption by federal law. After trial, the trial court found in favor of the plaintiffs, awarding damages and apportioning fault equally between the defendants. We affirm the judgment of the trial court.

## Factual and Procedural Background

The plaintiffs, Kay and Barry Barnett, own a beach house in Cameron Parish. Their original dwelling on that property was destroyed in 2005 by Hurricane Rita. Although Travelers Insurance Company had issued a policy on the property to the plaintiffs under the National Flood Insurance Program (NFIP), Travelers informed them after Hurricane Rita that their property could not be insured under that program given its location within a Coastal Barrier Resource System (CBRS).

Thereafter, Mr. Barnett contacted Gary Pearce, an agent at Insurance Unlimited of Louisiana, Inc., to inquire about the possibility of obtaining NFIP flood insurance for their property. Mr. Barnett explained that he did so after learning that a neighbor had been able to insure his property through the agency. Mr. Pearce forwarded the Barnett application to Fidelity National Property and Casualty Insurance Company, a Write Your Own (WYO) Program carrier

participating in the NFIP.[1]  Fidelity subsequently issued the policy, purportedly effective on July 2, 2008.

However, after the plaintiffs' house sustained damage as a result of Hurricane Ike in September 2008, Fidelity issued a December 2008 notice of cancellation indicating that the policy was cancelled, retroactive to the policy inception date of July 2, 2008.  The record establishes that the basis for the cancellation was a determination that the property was located within a CBRS zone.

The Barnetts filed suit against Fidelity and Insurance Unlimited, seeking damages for breach of contract, breach of warranty, negligence, and negligent misrepresentation.  The trial court rejected exceptions and a motion for summary judgment filed by Fidelity, wherein it asserted that the trial court lacked subject matter jurisdiction and that the matter was preempted by federal law as the policy was issued pursuant to the NFIP.  The trial court also denied a motion for summary judgment filed by Insurance Unlimited wherein it had alleged that the plaintiffs failed to inform the agency of the home's location in a CBRS.

After a trial on the merits, the trial court rendered judgment in favor of the plaintiffs.  In reasons for ruling, the trial court found that Insurance Unlimited was

---

[1] The NFIP Flood Insurance Manual, portions of which were entered into evidence in this case, provides as follows with regard to the Write Your Own Program:

> The Write Your Own (WYO) Program, begun in 1983, is a cooperative undertaking of FEMA and the private insurance industry.  The WYO Program operates within the context of the NFIP and is subject to its rules and regulations.  WYO allows participating property and casualty insurance companies to write and service federal flood insurance in their own names.  The companies receive an expense allowance for policies written and claims processed while the federal government retains responsibility for underwriting losses.  Individual WYO Companies may, to the extent possible, and consistent with Program rules and regulations, conform their flood business to their normal business practices for other lines of insurance.  Many producers have elected to move or place their flood policies with one or more of the WYO Companies they represent.

2

negligent in failing to follow federal guidelines in processing the plaintiffs' application. It found that both Insurance Unlimited and Fidelity were negligent in failing to determine that the property was in a CBRS zone and that they had negligently misrepresented the validity of the flood insurance policy issued and the insurability of the property under the NFIP. The trial court determined that the plaintiffs relied on those negligent misrepresentations, believing that they had a valid policy in place at the time of Hurricane Ike and that the defendants also breached fiduciary duties owed to the plaintiffs. The defendants' negligence, negligent misrepresentation, and breach of fiduciary duties, the trial court concluded, were causes-in-fact of the harm suffered by the plaintiffs. The risk of the harm suffered was found to be within the scope of the duties owed by the defendants. The trial court assessed fault equally to the defendants.

With regard to damages, the trial court found that the plaintiffs sustained in excess of $50,000.00 in damages stemming from the conduct of the defendants. However, given the plaintiffs' pre-trial stipulation and waiver of jury demand under La.Code Civ.P. art. 1732(1), the judgment reduced the damages awarded to $50,000.00.

Both defendants have appealed the judgment.

**Discussion**

*Fidelity – Subject Matter Jurisdiction and Preemption*

The plaintiffs advanced state-law-based claims against Fidelity, asserting that they relied on the representation of a flood insurance policy. In pre-trial exceptions, and again on appeal, Fidelity asserts that the state court lacked subject matter jurisdiction insofar as the claim stems from a policy involving the NFIP.

*See* 42 U.S.C. § 4071-72. It also asserts that any state-law claims are preempted by

operation of the NFIP. *See* 44 C.F.R. § 61.5(e) .

The trial court denied Fidelity's exceptions regarding the existence of

federal question jurisdiction and preemption, rejecting its claims throughout this

litigation. The trial court resolved the jurisdiction and preemption issues by

relying on *Campo v. Allstate Insurance Company*, 562 F.3d 751 (5th Cir. 2009),[2]

---

[2] In reasons for ruling, the trial court explained:

> FIDELITY argues that it acted at all times herein in its capacity as a Write Your Own (WYO) Program flood insurance carrier, as a fiscal agent of the United States, in a program governed exclusively by federal law. Further, the plaintiffs' claims raise exclusive questions of federal law, and thus this court lacks concurrent subject matter jurisdiction over this litigation.

> Plaintiffs argue that while federal law preempts state law tort claims arising from *claims handling* by a WYO carrier, federal law does not preempt state law claims related to insurance *procurement*, and directs the court to *Campo v. Allstate Ins. Co.*, 562 F.3d 751 (5th Cir. 2009). In that case, the United States Fifth Circuit Court of Appeal addressed this issue. The Campos had purchased a Standard Flood Insurance Policy (SFIP) through Allstate Insurance Company in its capacity as a WYO. For over twenty years, plaintiffs had SFIP on their home. On August 13, 2005, plaintiffs' coverage ended when the premium was paid. The policy included a 30-day grace period for payments, so that if the Campos paid the premium by September 13, they would have avoided a gap in coverage. On August 29, 2005, Hurricane Katrina destroyed plaintiffs' home. Because of Hurricane Katrina, the Federal Emergency Management Agency (FEMA) extended the deadline for an additional 90 days or until December 12, 2005 for the purposes of the plaintiffs' policy. Shortly after Hurricane Katrina, Plaintiffs made a claim on their SFIP. Allstate indicated that they were evaluating the claim and had requested that the policy limits be paid. Allstate also made an advance payment of $2500 to the plaintiffs. However, Allstate never advised the plaintiffs that the payments were conditioned upon the timely payment of the renewal premium. After the deadlines for paying the premium had expired, Allstate denied the claim based on no coverage being in place. The Fifth Circuit concluded that the plaintiffs' claims were related to *policy procurement* and not preempted by federal law.

> In the instant case, the plaintiffs' allege that FIDELITY sold them a policy that was invalid under federal law, and therefore, the plaintiffs never dealt with the federal government or its agents. Rather they were dealing with FIDELITY as a private insurer acting outside of its scope as a WYO carrier. Furthermore, because there was never any valid SFIP under federal law in this case, there are no federal laws at issue and thus no question of federal jurisdiction.

> Just as in the *Campo* case, this court finds that the issues in this case are related to *policy procurement* and not *claims handling* and thus are not preempted by federal law. Thus, the court has subject matter jurisdiction over plaintiffs' state law claims. The defendant's Exception of Lack of Subject Matter Jurisdiction is therefore overruled.

4

wherein the United States Court of Appeals, Fifth Circuit recognized the federal statutory and regulatory framework of the NFIP and the federal question jurisdiction and preemption implications of that body of law. However, the Fifth Circuit recognized a distinction between state-law claims arising from *claims handling*, which implicate both jurisdiction and preemption concerns, and those state-law claims stemming from *policy procurement*, which do not have such implications. *Id.* Under the guidance of *Campo*, the trial court found that the plaintiffs advanced claims strictly related to policy procurement. Thus, the trial court ultimately resolved this matter under the plaintiffs' state-law claims. After review, we find that the trial court correctly determined that this case involves policy procurement.

In this case, Fidelity declared the policy to be cancelled and did so retroactive to the inception date.[3] At trial, Fidelity's Vice President of Claims,

---

The trial court revisited the matter upon summary judgments filed by Fidelity and Insurance Unlimited. Denying both motions, the trial court explained:

> FIDELITY argues that this court lacks subject matter jurisdiction because this matter involves only questions of federal law. This court has previously ruled on FIDELITY's Exception of Subject Matter Jurisdiction and subsequently provided written reasons. FIDELITY's motion for summary judgment is basically a reconsideration of its exception of lack of subject matter jurisdiction. Thus, the court will deny FIDELITY's motion for summary judgment.

[3] The Fidelity "Notice of Cancellation" issued to the plaintiffs provides:

> Dear Insured:
>
> We have sent you a policy under which you are anticipating coverage or have been provided coverage. Unfortunately, because of recently discovered information we are unable to provide the coverages set forth in your policy. Consequently, the policy indicated above has been cancelled as of the date and for reason(s) listed below.
>
> Cancellation Date: 12:01 a.m. Standard Time on 7/02/08
>
> Reason(s) for Cancellation
>
> 06 – RISK NOT ELIGIBLE FOR COVERAGE

Deborah Price, affirmed that the policy was determined to be void from its inception. When the plaintiffs' counsel inquired whether it was "as if it never existed basically," Ms. Price replied "[c]orrect." While denying the existence of the policy at issue, Fidelity seeks to avail itself of the jurisdictional and preemptive qualities of the federal statutory scheme applicable to that very policy.

We note that, in *Landry v. State Farm Fire & Casualty Company*, 428 F.Supp.2d 531 (E.D.La. 2006), the United States District Court for the Eastern District of Louisiana considered a case in which the insurer posed the preemption issue in the context of a plaintiff's claim against an agent and NFIP insurer for failure to procure contents coverage as part of the insured's flood insurance policy issued under the NFIA. Even for this discrete aspect of coverage, the district court concluded that the matter was one involving procurement insofar as it "involve[d] the initial obtaining of coverage." *Id*. at 535. It noted that "many aspects of NFIPs are heavily regulated by FEMA; however, the obtaining of coverage does not involve the interpretation or management of an *active NFIP*." *Id*. (Emphasis added.) Therefore, the federal district court determined that the matter before it involved procurement and did not pose a federal question. *Id*. The matter was ultimately remanded to a Louisiana state district court. *Id*.

In *Campo*, 562 F.3d 751, a case involving a renewal of a flood insurance policy, the Fifth Circuit remarked favorably on the approach of *Landry* and extended that reasoning beyond *initial* procurement. Rather, the plaintiff in *Campo* alleged that the insurer and its representatives made negligent misrepresentations preventing a *renewal* of his flood insurance policy. The Fifth Circuit noted that the

---

The "Flood Declarations Page" includes an "Inception Date" of "7/02/08 12:01 am" and a "Policy Period" of "7/02/08 to "7/02/09 12:01 am Standard Time."

plaintiff's "claim" was merely a "fictitious claim" insofar as "the act of filing a claim on an *expired* policy, i.e., a dormant policy, is equivalent to filing no claim at all." *Id.* at 756. The court stated that: "At the relevant time, Campo's policy had expired subject to restoration only in the event that he paid the premium within the extended grace period. Allstate was thus by definition incapable of *handling* any new claims based on post-expiration occurrences." *Id.* The court observed that in light of a failure to renew:

> Campo's coverage had *expired;* there was thus nothing to continue. Instead, as a former policyholder, Campo would have had to *procure* flood insurance. One way for him to do this was to pay his renewal premium to Allstate by December 12, which would have caused his expired policy to be *reinstated*. The mere fact that Allstate, for a time, mistakenly acted as though a claim existed does not make it so. It is thus impossible for Campo's claims to fall within the category of handling.

*Id.*

Here, it is apparent that the claims are procurement-related. As in *Campo*, there was no claim to handle and the plaintiffs do not seek to enforce the policy or pursue their damages claim under the policy. Rather, in essence, the plaintiffs in this case did not procure a policy. The mere issuance of a declaration page cannot be said to equate to the existence of a policy when, as here, the insurer declared that policy to be invalid from the date of inception. As affirmed by Ms. Price of Fidelity, whose testimony is referenced above, the policy essentially never existed.

Additionally, in *Grissom v. Liberty Mutual Fire Insurance Company*, 678 F.3d 397, 401 (5th Cir. 2012), the Fifth Circuit explained that:

> The key factor to determine if an interaction with an insurer is "claims handling" is the status of the insured at the time of the interaction between the parties. If the individual is already covered and in the midst of a non-lapsed insurance policy, the interactions between the insurer and insured, including renewals of insurance, are "claims handling" subject to preemption.

7

Consideration of this "key factor" in light of the facts of this case pointedly reveals the interactions involved as procurement-related, not claims handling. Fidelity's treatment of the underlying policy as one that never came into existence evidences that any interaction was not in the midst of a relationship between an insured and an insurer. In light of the above guidance, we find that this matter does not involve federal question jurisdiction.

Further, we find that the trial court appropriately determined that the plaintiffs' policy procurement claims are not preempted by federal law. Such a result is dictated by *Campo*, 562 F.3d 751. In reaching its pronouncement that "federal law does not preempt state-law procurement based claims[,]" the Fifth Circuit found that the United States Congress expressly preempted state law only as to handling-related claims. *Id.* at 757. In a footnote, the Fifth Circuit referenced that portion of the Standard Flood Insurance Policy (SFIP) providing that: "'This policy and all disputes arising from the *handling* of any claim under the policy are governed exclusively by' FEMA regulations." *Campo*, 562 F.3d at 757, n.38 (quoting 44 C.F.R. pt. 61, app. A(1), art. IX).[4] This defined term of preemptive reach, the Fifth Circuit determined, reveals a lack of congressional interest in a

---

[4] Fidelity lodged separate jurisdictional and preemption arguments in this case. However, as with preemption, the Standard Flood Insurance Policy addresses the federal jurisdiction question in reference to *claims handling*. In this regard, the SFIP provides:

R. Suit Against Us

You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within one year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the covered property was located at the time of loss. This requirement applies to any *claim that you may have under this policy* and *to any dispute that you may have arising out of the handling of any claim* under the policy.

*See* 44 C.F.R. pt. 61, app. A(1), art. VII (emphasis added).

8

more wide-reaching limit of state power. *Id*. (quoting *United States v. 4,432 Mastercases of Cigarettes, More or Less*, 448 F.3d 1168 (9th Cir. 2006)).

Additionally, the Fifth Circuit concluded that "unlike in handling-based cases, permitting prosecution of procurement-related state-law tort suits does not impede the full purposes and objective of Congress." *Campo*, 562 F.3d at 758. Instead, it noted that the purpose of the NFIP is to reduce the burden on the federal fisc since FEMA does not reimburse insurers for judgments that are procurement-related. *Id.* (citing, in part, *Landry*, 428 F.Supp.2d 531).

Finally, in this discussion, we are mindful that Fidelity suggests that this case should follow Florida and California state appellate court decisions finding that those states lacked concurrent subject matter jurisdiction. *See Seibels Bruce Ins. Cos. v. Deville Condo. Ass'n, Inc.*, 786 So.2d 616 (Fla. Dist.Ct. App. 1st Cir. 2001); *McCormick v. Travelers Ins. Co.*, 86 Cal.App.4th 404 (Cal.Ct. App. 2001). However, those cases were rendered outside the Fifth Circuit, were rendered before *Campo* was decided, and involved claims on existing policies. They did not involve, as here, state-law claims based on a policy void from its inception.

For these reasons, we find no merit in Fidelity's arguments regarding federal question jurisdiction and preemption of state law claims.

*Fidelity – Federal Funds*

Fidelity also argues that the trial court's rejection of its preemption claims runs afoul of the Appropriations Clause of the United States Constitution and United States Supreme Court jurisprudence. *See* U.S. Const. art. I, § 9, cl. 7. *See also Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465 (1990) (wherein the Supreme Court found that payments from the Federal Treasury are limited to those statutorily authorized). Fidelity asserts that proceedings arising

from its status as an insurer under the NFIP implicates federal funds, whether such expenditures are related to litigation or to a resulting judgment against it. It contends that the plaintiffs had the burden of proving that federal funds are not, in fact, at risk, citing *Grissom*, 678 F.3d 397 and *Wright v. Allstate Insurance Company*, 415 F.3d 384 (5th Cir. 2005).

Under the facts of this case, however, we find no merit in Fidelity's argument. Certainly, 42 U.S.C. § 4071(a)(1) recognizes insurers under the NFIP as fiscal agents of the United States. Additionally, the financial relationship between FEMA and such insurers is governed by the terms and conditions of the Federal Emergency Management Agency, Federal Insurance Administration, Financial/Assistance Subsidy Arrangement. *See* 44 C.F.R. pt. 62, app. A. *See also Grissom*, 678 F.3d 397. That Arrangement provides that the federal government will pay certain claims and reimburse certain costs incurred by those private insurers participating in the NFIP. *See* 44 C.F.R. pt. 62, app. A, art. III(D). Specifically, the federal government indemnifies and defends NFIP insurers for insurance and litigation expenses. *Id.*

However, the federal regulations plainly provide that such expenses will be provided unless the FEMA Office of the Chief Counsel finds "that the litigation is grounded in actions by the Company that are significantly outside of this Arrangement, and/or involves issues of agent negligence." 44 C.F.R. pt. 62, app. A, art. III(D)(3)(a). The Arrangement, thereafter, provides for related notices and reviews of such a determination. *See* 44 C.F.R. pt. 62, app. A, art. III(D)(3)(a).

Additionally, in *Grissom*, 678 F.3d 397, the Fifth Circuit considered the above aspects of the Arrangement in its consideration of whether cases arising

under the NFIP may be heard by a jury.  In the context of that discussion, the Fifth

Circuit explained that:

> Unless FEMA explicitly notifies the insurance company of its intent not to defend or indemnify, FEMA is presumed to pay the litigation expenses and any resulting damages awards.  In the absence of this document or even any allegation that FEMA notified [the insurer] of its intent not to defend or indemnify, FEMA is assumed to be paying the expenses of the litigation.

*Id.* at 402.  Fidelity points to this presumption and asserts that the plaintiffs failed

to present evidence of an intent not to defend or indemnify in this case.

However, this case differs from *Grissom*, 678 F.3d 397.  Significantly,

*Grissom* was a claims handling case in which a policy was in place.  Thus, the

Fifth Circuit determined that "*Campo* [did] not control" and the plaintiff's "state

law claim [was] preempted."  *Id.* at 401.  Additionally, the Fifth Circuit considered

the question before it in the context of whether the use of federal funds prohibited

consideration of the matter by a jury.  *Id.*

In contrast to *Grissom*, this case involves policy procurement.  Neither are

the plaintiffs' state law claims preempted in this case.  *See Campo*, 562 F.3d 751.

Further, in light of the circumstances of this case, we note that the Arrangement

provides for the payment of litigation expenses unless "the litigation is grounded in

actions by the Company that are significantly outside of this Arrangement, and/or

involves issues of agent negligence."  44 C.F.R. pt. 62, app. A, art. (III)(D)(3)(a).

Having recognized these distinctions, we do not disturb the trial court's adherence

to *Campo*, wherein the Fifth Circuit pointedly concluded:  "[S]tate-law tort claims

related to procurement do not interfere with Congress's objectives.  Federal law

thus does not preclude Campo from pursing his procurement-based suit that asserts

a state-law cause of action for Allstate's allegedly negligent misrepresentations." *Id.* at 758 (footnotes omitted).[5]

This assignment lacks merit.

*Fidelity – Misrepresentation Claims*

The distinction that the subject policy was void from its inception date also undermines Fidelity's contention that the plaintiffs cannot pursue claims for misrepresentations against it, as a fiscal agent of the federal government, through the NFIP. However, the cases that Fidelity cites are factually distinguishable insofar as they involve the existence of a relationship between the plaintiff and the federal government or its agents. *See e.g.*, *Federal Crop. Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1 (1947); *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218 (1984). In those cases, litigants were charged with knowledge of the laws surrounding the federal programs at issue and were not able to, therefore, rely on representations of the government's agents. However, as explained above, the policy in this case was void from inception, distancing this case from the NFIP through which Fidelity could claim status as a fiscal agent of the federal government per 42 U.S.C. § 4071.

Within this assignment, Fidelity also suggests that the plaintiffs' recovery is barred by La.Civ.Code art. 5, which provides that: "No one may avail himself of ignorance of the law." Fidelity contends that the plaintiffs must be held to have known of the prohibitions regarding the general unavailability of federal flood insurance in CBRS zones. However, in this case, the trial court found the status of

---

[5] We further point out that *Campo* acknowledged 44 C.F.R. pt. 62, app. A, art. III (D)(3)(a) in its consideration of the statutory and regulatory framework surrounding the preemption question.

the property's location unclear and rejected the assertion that the plaintiffs made misleading representations in this regard. We find that the record supports this factual finding; thus, we find no merit in this assignment of error.

*Fidelity – Merits*

In its final assignment, Fidelity argues that the trial court erred in entering judgment on the plaintiffs' negligence-based claims insofar as the evidence does not reveal a breach of a specific standard of care. Further, Fidelity contends that doing so suggests that the courts of this state can dictate the national standards applicable to the NFIP.

We find no merit in this argument. Again, any relationship in this case has been found to exist outside of the NFIP. Thus, any requirement cannot be said to tread upon the dictates of that program as contained within the federal statutory and regulatory framework.

Furthermore, and within the context of Louisiana negligence law, we do find that the record supports the trial court's conclusion that Fidelity breached a standard of care owed to the plaintiffs. In particular, Donald Brayer, accepted by the trial court as an expert in the customs and practices of agents and insurers in the procurement of insurance, testified that Fidelity had a duty to notify the plaintiffs that their property was potentially located in a CBRS zone, even after the policy was issued on July 2, 2008. Such a duty arose when Fidelity became aware that another property in the plaintiffs' subdivision was identified as being located in the CBRS zone. Mr. Brayer explained that both Insurance Unlimited and Fidelity should have informed the plaintiffs of the potential that their policy was null and void due to its location. Yet, it is undisputed that such a question was not raised with regard to the plaintiffs' property until after the claim was made on the

13

damage sustained in Hurricane Ike. Insofar as it touches on the elements of negligent misrepresentation and damages, Mr. Brayer opined that it was more likely than not that, during that time frame, other flood insurance would likely have been available to the plaintiffs for their property.

Accordingly, we find no merit in Fidelity's contention that the plaintiffs' did not provide adequate proof of a breach of a specific standard of care.

*Insurance Unlimited – Breach of a Duty*

In its separate appeal, Insurance Unlimited also contends that the trial court erred in finding that it breached a duty owed to the plaintiffs. In particular, Insurance Unlimited contends that Mr. Pearce fulfilled his duty of seeking to secure a flood policy and that he did so by completing the NFIP application using information provided by the plaintiffs. It also notes that the application was submitted based on what it contends was the best available evidence on the question of eligibility.

In finding in favor of the plaintiffs, the trial court determined that Insurance Unlimited failed to follow the guidelines of the NFIP Flood Insurance Manual in processing the application and in failing to determine that the plaintiffs' property was located in a CBRS zone. This negligence ultimately enabled the negligent misrepresentation that a valid policy was in place.

The supreme court has explained that "an insurance agent owes a duty of 'reasonable diligence' to his customer." *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 09-2161, p. 7 (La. 7/6/10), 42 So.3d 352, 356 (quoting *Roger v. Dufrene*, 613 So.2d 947, 949 (La.1993)). That duty is fulfilled when the agent procures the requested insurance. *Id.* An insured pursuing a claim must demonstrate that: "1) the insurance agent agreed to procure the insurance; 2) the agent failed to use

14

'reasonable diligence' in attempting to procure the insurance and failed to notify the client promptly that the agent did not obtain insurance and 3) the agent acted in such a way that the client could assume he was insured." *Id.* at 356-57.

The record supports the trial court's ruling in light of the above standard. In part, the evidence supports the view that the application, as forwarded to Fidelity, was insufficient under the dictates of the NFIP manual. Shelley Young, Insurance Unlimited's Managing Supervisor, confirmed that agents are expected to abide by the NFIP manual. However, despite knowledge that the Long Beach Road community was potentially in a CBRS zone, Mr. Pearce did not take measures to verify the property's insurability in that regard. On this point, the NFIP manual provides that:

> To determine if a building is eligible for flood insurance coverage, the producer should consult the list of communities where coastal barriers and/or [Otherwise Protected Areas] have been identified. The list is included in this section. The community's map should **always** be reviewed to determine if the property to be insured is located in a designated CBRS area or an OPA.

(Emphasis in the original.)

Ms. Young explained that the agency follows this guideline as the agents are familiar with the maps. However, it is clear that Mr. Pearce did not consult the map to "determine if the property to be insured [was] located in a designated CBRS area or an OPA." Even assuming familiarity on the part of Mr. Pearce in this case, it is apparent that, ultimately, the plaintiffs' property was determined to be within the CBRS. Additionally, the application Insurance Unlimited forwarded to Fidelity included an Elevation Certificate for the property which was silent on the CBRS location. According to Ms. Price of Fidelity, the NFIP manual requires that the document be certified as complete by the surveyor. However, the

Elevation Certificate submitted with the application did not resolve the CBRS question.

Thus, the evidence supports a view that Insurance Unlimited forwarded a deficient application to Fidelity, which, in turn, issued the subject policy. Relying upon this policy, later found to be void, the plaintiffs did not pursue other measures of insuring their property and subsequently sustained damage based on the lack of a valid policy.

This assignment lacks merit.

*Insurance Unlimited – Material Misrepresentation*

Neither do we find merit in Insurance Unlimited's contention that its liability is negated or diminished because it relied on information provided by the plaintiffs. The insurer asserts that the plaintiffs were aware that their property was uninsurable given Travelers' cancellation of their prior policy in 2007, but that they did not reveal that the location of their property was within the CBRS zone in completing their 2008 application. Insurance Unlimited notes that the plaintiffs signed the application indicating that their statements were true and correct.

In ruling on this defense, the trial court explained:

> The DEFENDANTS argue that Mr. Barnett intentionally hid the fact that his property was not eligible for NFIP coverage, and that his previous policy had been cancelled by Travelers because it was located in a CPRS [sic] zone. The overall testimony and evidence presented at trial does not indicate that Mr. Barnett was being deceitful or was intentionally omitting information to Mr. Pearce in order to obtain flood insurance. In fact, Mr. Barnett seems to be someone who does not really understand the working of insurance policies. He provided everything that Mr. Pearce had requested. Further, there was a sufficient question as to whether the plaintiffs' property was actually located in a CBRS zone. Mr. George A. Evans, Jr., a registered professional land surveyor, issued an elevation certificate on the property, dated May 24, 2004, and did not check the applicable box indicating that the property was in a CBRS zone. Mr. Lonnie C. Harper, a registered professional land surveyor, also issued

an elevation certificate on the same property, dated June 27, 2007, and he did not check the applicable box indicating that the property is located in a CBRS zone. Mr. Barnett's neighbor had advised Mr. Barnett that his property was eligible for flood insurance. Further, two separate site specific Standard Flood Hazard Determinations were completed on the Barnetts' property during the application process. Both indicated that the Barnetts' property was eligible for NFIP. Accordingly, the court does not find that Mr. Barnett made any material misrepresentations during the application process.

The transcript and documentary evidence in this case support the trial court's observations regarding the questions surrounding the location of the plaintiffs' property and further support the determination that no material misrepresentations were made. We point out that Mr. Barnett testified that he met with Mr. Pearce after being informed that a neighbor had obtained flood insurance through Insurance Unlimited. Mr. Barnett explained that he indicated to Mr. Pearce that Travelers had cancelled a prior policy due to location in a CBRS zone. Mr. Barnett denied that he withheld the information regarding the Travelers' cancellation and stated that: "It was never my intent to hide anything."

In light of this evidence and the attendant credibility determinations made by the trial court, we find no merit in this claim of material misrepresentation.

*Insurance Unlimited – Federal Law*

Like Fidelity, Insurance Unlimited claims that the plaintiffs' state law claims are preempted by the NFIP. However, as stated above, *Campo*, 562 F.3d 751, clearly indicates that claims related to policy procurement are not, in fact, preempted. In light of the discussion above, we do not address this assignment further. Neither do we separately address Insurance Unlimited's assertion that the plaintiffs must be charged with the knowledge of the guidelines surrounding the NFIP. Rather, as explained above, the subject policy was determined to be void

from its inception, removing this case from the federal framework Insurance Unlimited asserts is applicable.

For the reasons expressed herein, Insurance Unlimited's arguments regarding the applicability of federal law lack merit.

*Insurance Unlimited – Damages*

Finally, Insurance Unlimited contests the trial court's award of damages.[6]  In particular, it notes that the trial court reduced the damages awarded by reference to an alternate, private flood insurance policy obtained by the plaintiff shortly before trial.  However, Insurance Unlimited argues that the trial court erred in relying on the figure of the private insurance since the quoted private insurance coverage was

_____

[6] In awarding damages, the trial court explained:

DEFENDANTS further argue that the plaintiffs should not get the benefit of purchasing a non-NFIP policy just forty-five (45) days prior to trial.  The explanation given by Mr. Barnett for waiting to purchase flood insurance until approximately two months before trial was that the defendants were still disputing whether the property was located in a CBRS zone and they had recently agreed that the property was in a CBRS zone.  [Record citations omitted.]  The court is aware that the defendants maintained up until February of 2012 that there was a valid flood insurance policy in effect on plaintiffs' property at the time Hurricane Ike made landfall.  It was not until February of 2012 that they conceded that the policy was without any effect.

The court finds judgment in favor of the plaintiffs and against the defendant equally in this matter.  The damages proven by the plaintiffs are as follows:

| | |
|---|---|
| Flood Damage sustained by Hurricane Ike: | $62,531.86 |
| Premium paid to Fidelity: | $ 1,539.00 |
| TOTAL: | $64,070.86 |

These damages are reduced by the SWBC Premium of $3,455.55 paid by the plaintiffs, and the $10,000 deductible that was applicable under the policy.  The total damages proven by the plaintiffs, therefore, is $50,615.31.  This amount is further reduced to $50,000 due to plaintiffs' stipulation that their claim did not exceed the sum of $50,000, exclusive of interest and costs.

We note that the plaintiffs' calculation in their brief to this court reflects a reduction of an SWBC premium of $4,058.25 and a total damages award of $50,012.61.  These figures relate to expert testimony estimating the expense associated with procuring private flood insurance in 2008.  The trial court's calculations are set forth above for purposes of illustration.  Under either calculation, the sustained damages exceeded $50,000.00.  In light of the plaintiffs' pre-trial stipulation and waiver of jury demand pursuant to La.Code Civ.P. art. 1732(1), the resulting judgment awarded a reduced figure of $50.000.00.

for less than the full coverage sought under the NFIP. Insurance Unlimited contends that "any damage consideration should include the appropriate reduction for premium and deductible amounts for similar coverage." On this point, Insurance Unlimited would have preferred for the trial court to rely on a 2007 quote for full coverage, private flood insurance rejected by the plaintiffs before seeking NFIP coverage through Insurance Unlimited.

While the private insurance ultimately obtained by the plaintiffs was not for the full coverage sought from the NFIP, we find no abuse of the trial court's discretion in relying on those figures as the appropriate evidence before it. The plaintiffs specifically rejected the 2007 private insurance quote for full coverage in light of its costs and, only later, pursued NFIP coverage. Without notice of their ineligibility under the NFIP, the plaintiffs did not pursue any available options for private insurance, full coverage or otherwise, until after the final determination that the instant policy was void from inception. Given the evidence before it, we find no abuse of the trial court's discretion in shaping the final award of damages.

This assignment lacks merit.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assessed equally to the defendants/appellants, Fidelity National Property & Casualty Insurance Company and Insurance Unlimited of Louisiana, Inc.

**AFFIRMED.**